UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
MARIE MOORE,                                                                    CASE NO: 07 CV 0397 (ENV)

                Plaintiff,

     - against -

DIVERSIFIED COLLECTION SERVICES, INC.
                Defendant.
-------------------------------------------------------------- X


### PLAINTIFF'S MOTION FOR ATTORNEY'S FEES & COSTS

**TABLE OF CONTENTS**

I.  INTRODUCTION …........................................................................ 1

II.  MEET AND CONFER …….…………………………………….…... 1

III.  HISTORY OF THE CASE …..……………………………………….2

    Initial Factual Presentation ……………………………..............…….. 2

    Personal Attack on Plaintiff's Counsel…………………………………...5

    Defensive Strategy………………………………………...……………………6

    Settlement Efforts ……………………………………...…………………. 10

    New Counsel…………………. …………………………………………13


IV.  ARGUMENT …………………………………………….. 15

    Lodestar ……………………………...........................……... 16

    Hourly Rate ..………………………………………………….....……... 17

    Hours ……………………………………………...…………………  20

    Upward Multiplier ……………………………………...……………… 20

    Policy Consideration…………...…………………………………… 23


V.  CONCLUSION …………………………………………………… 25


TABLE OF AUTHORITIES ……………………………………………….. iii


PLAINTIFF'S EXHIBIT LIST …………………………………………….. v

# TABLE OF AUTHORITIES

## STATUTES

15 U.S.C. §1692 …………………………………………………………………… 15


## CASES

*Aramburu v. Healthcare Financial Services, Inc.,* 2009 WL 1086938...................................... 19

*Camacho v. Bridgeport Financial Inc.,* 523 F3d 973 (9th Cir. 2008). ……………………15, 17

*Cancio v. United Credit Network, Inc.,* 2005 US Dist. Lexis 13626 …………………………..16

*Chalmers v. City of Los Angeles,* 796 F2d 1205 (9th Cir. 1986)……….………………………16

*Crapanzano v. Nations Recovery Ctr., Inc.,* 2011 U.S. Dist. LEXIS 76759..………………17, 18

*Cuevas v. Check Resolution Services, Inc.,* No. 09 CV 8823(C.D.Cal. Sept. 9, 2010)..………20

*Danow v. Law Office of David E. Borback, P.A.* 634 F.Supp.2d 1337, 1343 (S.D.Fla. 2009.)…7

*Eddy v. Colonial Life Ins. Co.,* 59 F3d 201 (D.C. Cir. 1995) ………………..……………………14

*Emanuel v. American Credit Exchange,* 870 F.2d 805 (2d Cir.1989*)*…………………………..24

*Edwards v. National Business Factors, Inc.,* 897 F.Supp. 458 (D.Nev.1995). …......………....24

*Ferland v. Conrad Credit Corp.,* 244 F.3d 1145, (9th Cir. 2001)................................................ 23

*Garland v E. Hope Greenberg,* No. 09 CV 2643..…………..………………..…..…………..…… 21

*Gierlinger v. Gleason,* 160 F.3d 858 (2d Cir. 1998)................................................................. 17

*Grant v. Martinez,* 973 F.2d 96 (2d Cir. 1992)………………..………………………..… 16

*Graziano v. Harrison,* 950 F2d 107, 113 (3rd Cir. 1991)……………………………………… 15

*Gross v. Wash. Mut. Bank, F.A.,* 2006 WL 318814……………………..………………………19

*Jordan v. Multnomah County,* 815 F2d 1258 (9th Cir. 1987)........................................................ 16

*Johnson v. GDF, Inc.,* No. 11-1934 (N.D. Ill., E. Div., February 13, 2012)……......………..... 24

*Local 282, Int'l Bhd. of Teamsters v. Pile Found. Constr. Co.,*2011 WL 3471403................... 17

iii
*Moore v Diversified Collection Services, Inc., 07-cv-03970-ENV-VVP*
Plaintiff's Motion for Attorney's Fees and Costs

*Marek v. Chesny,* 473 U.S. 1 (1985)……………………………………………………..… 14

*In re Martinez,* 266 B.R. 523 (S.D.Fla.2001)............................................................................ 24

*McDaniel v. County of Schenectady,* 595 F.3d 411 (2d Cir. 2010). …………....………..…  20

*Mihovic v Cambridge, Huxley & Assoc.,* No. 09 CV 9584 (S.D.N.Y. January 27, 2012)...…… 20

*Pita v. Tulcingo Car Serv.* 2011 WL 1790833...………………………………………..……… 17

*Penberg v. Healthbridge Mgt.* 2011 WL 1100103……………….…………….....………..…. 18

*Saunders v. Salvation Army,* 2007 WL 927529……………………………………....………  16

*Savoie v. Merchants Bank,* 166 F.3d 456 (2d Cir. 1999)…………….………............................20

*Stanton v. Boeing Co.,* 327 F3d 938 (9th Cir. 2003)……………….…………………..… 15

*Student Public Interest Research Group v. AT&T Bell Lab.,* 842 F.2d 1436 (3d Cir. 1988). … 23

*Venes v. Professional Service Bureau, Inc.,* 353 N.W.2d  671 (Minn. App. 1984)………….... 23

## PLAINTIFF'S EXHIBIT LIST

A. Detailed hourly log

B. Itemized Costs & Receipts

C. Consumer Law Fee Survey from 2010-2011

D. February 15, 2007 Letter from Defendant's in-house Counsel Betsy Franklin

E. February 26, 2007 Credit Report of Plaintiff's Counsel Amir Goldstein

F. April 2, 2007 Letter from Defendant's Counsel Jay Winston

G. June 8, 2007 Letter from Plaintiff's Counsel Amir Goldstein

H. February 13, 2009 Order

I. Deposition Excerpts – Dennis Christie

J. July 7, 2009 Letter from Defendant's Counsel Jay Winston

K. E-mail correspondence

L. Transcript Excerpts – July 14, 2009 Conference

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
MARIE MOORE,

       Plaintiff,      CASE NO: 07 CV 0397 (ENV)

  - against -

DIVERSIFIED COLLECTION SERVICES, INC.

       Defendant.
-------------------------------------------------------------- X

## MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

### I.   INTRODUCTION

Plaintiff MARIE MOORE ("Plaintiff"), by and through her attorney, AMIR J. GOLDSTEIN, ESQ., submits this Memorandum of Law in Support of Plaintiff's Motion for Attorney's Fees and Costs against Defendant DIVERSIFIED COLLECTION SERVICES, INC. ("Defendant").  Plaintiff submits on the pleadings and requests no oral arguments, unless otherwise requested by the Court.

### II.  MEET AND CONFER

The undersigned counsel hereby certifies that on or about March 19, 2012, following Plaintiff's acceptance of Defendant's Rule 68 Offer of Judgment, efforts were made to settle the issue of attorney's fees and costs with Defendant's Counsel as per the Stipulation of the parties. The undersigned counsel provided an estimate of the time spent on the case, billing records, together with the hourly rates, and various settlement offers in a good faith effort to resolve the matter of attorney's fees in an effort to conserve on further judicial costs and resources.  To date,

Defendant has continued to maintain an aggressive negotiation stance, willing only to offer a small fraction of the costs and fees that have accrued over the course of this five year litigation. Consistent with its approach to this entire case, Defendant prefers to "roll the dice" and avoid the act of compromise in the hopes that further litigation will result in a reduction of its liability, and have the effect of Court ordered compromise.

### III.   HISTORY OF THE CASE

Plaintiff instituted this action for violations of the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (hereinafter the "FDCPA").  The action was initiated by the filing of a Summons and Complaint on January 29, 2007 and Defendant was promptly served on February 1, 2007.  The Complaint alleged that the Defendant, Diversified Collection Services, Inc. ("DCS"), in an effort to force payment of a disputed debt by means of duress and coercion, violated the Plaintiff's consumer rights by making various false and deceptive statements. Defendant denied the allegations in its Answer and in various initial communications and negotiations, denied any wrongdoing. Thereafter, the litigation ensued.

### <u>INITIAL FACTUAL PRESENTATION</u>

The facts in this case are fairly simple.  Defendant, a debt collection agency, the type that resembles a stereotypical "bully," contacted the Plaintiff in an effort to collect a debt.  During the course of their negotiations, Defendant's agents engaged in factual manipulation and misrepresented to the Plaintiff that, if a large lump sum payment of $3,681.00 could be made, she could avoid the ensuing and purportedly imminent wage garnishment threats.  In an effort to avoid said garnishment, Plaintiff promptly issued a voucher for payment to the Defendant for the entire agreed upon sum.  In addition to making false threats, various deceptive statements and

misrepresentations to Plaintiff, Defendant could not or would not halt the wage garnishment, persisted with further boilerplate dunning notices and Plaintiff's paycheck was ultimately garnished.  Although Plaintiff had attempted on several occasions to contact Defendant's agent, she received the "run around" and could not be reconnected to "Jennifer Woods," the agent who had once made her said promises.  Plaintiff became the victim of a common "bait and switch" tactic by a debt collector who was willing to say anything to get a payment without regard for the truth or the consequences of the agent's misrepresentations.

In support of Plaintiff's claims, Ms. Moore provided factual deposition testimony and a sworn affidavit, supported by documentation to show that a) she had received dunning letters and phone calls from the Defendant Diversified Collection Services, Inc., and had reached an agreement with an agent of the Defendant; b) that in reliance of the terms of said agreement, namely to avoid a wage garnishment, Plaintiff submitted payment for the entire amount requested; c) that payment had been made with a voucher that contained a higher credit limit which could have been used to make a larger payment, (if that had been the agreement); d) that Defendant received said payment; e) that despite receipt of the payment, Plaintiff's wages were garnished;  f) that once her wages were garnished, Defendant persisted with collection efforts and further duns; g) but that the agent she had attempted to contact was no longer responsive, and Defendant would not honor the settlement, but rather, would continue to pressure her for the total balance plus interest, and withdraw unlawfully from her paycheck for two months thereafter.  Plaintiff further demonstrated that the Board of Education had subsequently admitted that the garnishment was excessive and partially reimbursed her, but that damage had already been done.  Ms. Moore was unable to understand why her wages had been garnished, and

without any response from Defendant's agent, she turned to her employer for an explanation. That explanation turned into an altercation which ultimately led to Ms. Moore's termination from her employment and caused Ms. Moore to experience emotional distress, aggravation and humiliation as a result of Defendant's harassment and deceptive misrepresentations.

Defendant, in support of its denial of the claims, provided no factual evidence whatsoever. Initially, Betsy Franklin, Defendant's in-house attorney, indicated that "both DCS notes and the collector" would substantiate the facts. The DCS notes ultimately corroborated Plaintiff's version of the facts, demonstrating that various settlement discussions took place with the collector as well as receipt of payments and various written communications as indicated by the Plaintiff. Defendant's "collector" would not appear for her version of the facts. Instead, Defendant took a "scorched earth" approach, personally attacking Plaintiff and Plaintiff's attorney, and steering the case towards technical and procedural arguments, and heavy, often frivolous motion practice.

Defendant, at the very outset of the case, began its defense with an extremely aggressive offensive approach. After being served with the Summons and Complaint on February 1, 2007, the initial contact to Plaintiff's Counsel on or about February 15, 2007, by Defendant's in-house counsel, Betsy Franklin, was a letter addressing the facts of the case, stating that "It appears that Ms. Moore did submit a voucher, and was quoted a payoff amount in excess of the voucher amount. The Department of Education opted to continue with Administrative Wage Garnishment (AWG) to collect the balance. Both DCS *account notes and the collector will substantiate the facts*." (Emphasis added.) See a copy of Betsy Franklin letter dated February

15, 2007 attached hereto as Exhibit D.  Although Ms. Franklin requested an extension of time to file an Answer and purportedly invited the Plaintiff to open settlement discussions, the case had been transferred to Jay Winston, Esq., for representation a few days later and she would not entertain settlement discussions.  Mr. Winston vehemently denied the truth of the allegations, accused Plaintiff's Counsel of falsifying the facts of the case, implied that Plaintiff herself was a "ghost" and had no interest in the case, threatened various motions, sanctions and counterclaims and demanded that the case be dismissed voluntarily as the only option for resolution.

## PERSONAL ATTACK ON PLAINTIFF'S COUNSEL

Concomitantly, on or about February 26, 2007, Plaintiff's Counsel discovered that Defendant placed four (4) derogatory markings on Plaintiff's *Counsel's* personal credit report, two accounts on February 10, 2007, and again on February 25, 2007.  The same two accounts had been reported as a "public record" and done repeatedly in a fashion that has the effect of four separate accounts in default.  Shockingly, Defendant personally attacked Plaintiff's Counsel by falsely and derogatorily taking repeated jabs at his personal credit, causing damage to his credit report in an effort to further dissuade any pursuit of the within action.  See a copy of Goldstein Consumer Info Report dated February 26, 2007 attached hereto as Exhibit E.  It should be noted that Counsel's student loan accounts were in repayment and in good standing at that time, with a different company.  Only upon notification of the outrageous action taken by Defendant against Plaintiff's Counsel shortly after service of the within Complaint, Mr. Winston was notified, and quickly responded that "I must have the dates confused" and again denied that he or his clients had done anything wrong.  Nevertheless, after warning Defendant of possible sanctions, the reports were removed and deleted.  Defendant's litigious approach to this case was intended as

an attempt to "shut down" Plaintiff's Counsel with personal attacks and "scorched earth litigation."

## <u>DEFENSIVE STRATEGY</u>

When discussions regarding the merits of the case and possible settlement were opened, Mr. Winston persisted with a series of threats to file various motions for sanctions and bad faith against the Plaintiff and Plaintiff's Counsel.  On or about April 2, 2007, in Mr. Winston's first official effort to address *the merits* of the case, he argued each of the allegations, drawing his own illogical legal and factual conclusions, and proposed to resolve the case, stating that the Defendant, in an effort to avoid incurring unnecessary attorney's fees, was willing to "reimburse [you] for Court costs, in exchange for a dismissal, mutual releases and letter from you stating that you do not have in your office at the time of the settlement any other pending cases against my client."  The letter continued, stating that if there was no response by April 9, 2007, Mr. Winston would "file his Answer, Affirmative Defenses, and Counterclaims" and demanded discovery production and a deposition date in the same paragraph.  A copy of the Winston letter dated April 2, 2007 is attached hereto as Exhibit F.  These were not settlement discussions, but rather an attempt to bully the Plaintiff into accepting nothing more than a $350.00 filing fee reimbursement, and a representation by Plaintiff's Counsel that no other lawsuits were going to be filed, or suffer an aggressive battle, with long winded arguments and vexatious claims.  Mr. Winston at times explained that his clients were responsible for the aggressive approach to the litigation and it was not his choice, and that they had a "personal agenda" against Plaintiff's Counsel. But, conveniently, Defendant is currently represented by new counsel, and will continue to mask the truth about this litigation.

Immediately after filing the Answer with Counterclaims, Defendant prepared to file its

first motion, pursuant to FRCP 12(b)6. Plaintiff's Counsel opposed the Defendant's request for a

motion on June 8, 2007 with a letter to Judge Vitaliano which asserted that "the allegations in

this case are extremely fact sensitive and would not be likely to yield a justiciable result on a

Rule 56 motion, let alone a rule 12 motion. It is Plaintiff's position that Defendant's request is

unreasonable and a further effort to quash the action by dilatory and wasteful litigation." A copy

of Plaintiffs letter dated June 8, 2007 is attached hereto as Exhibit G.


Subsequently, the Defendant compelled the parties into two years of fighting over every

single detail of the case -- from merits to procedure, discovery motions, requesting stays that

were denied, withholding responses to discovery and rejecting deposition notices on technical

grounds. Attorney courtesies were not considered and the temperament became extremely

hostile. All along, Plaintiff's requests to try and settle the case were met with Defendant's

response that the case had zero value and must be dismissed. As the record indicates,

Defendant's efforts to moot the case had failed[1], and their frivolous counterclaims were

dismissed.

---

[1] Defendant was partially successful in having some of the initial allegations in the
Complaint dismissed, however, this should not be a viewed as a lack of Plaintiff's
success or as a justification for Defendant's otherwise unreasonably aggressive and
wasteful defense strategy. See *Danow v. Law Office of David E. Borback, P.A.,* where
the Court found that plaintiff persevered in pursuing legitimate claims through the
diligent effort of his attorney despite a vigorous defense and the necessity to appeal
a prior dismissal in this case and where Plaintiff was finally able to convince the
jury of his claim and was awarded full statutory damages, the fact that plaintiff
brought and pursued related claims later dismissed or dropped before trial, does not
imply bad faith or improper purpose, or lead to the conclusion that plaintiff had only
"limited success" in the case. Thus, the Court found no bar to an award of Plaintiff's
attorney's fees and costs for any reason. *Danow v. Law Office of David E. Borback,
P.A.* 634 F.Supp.2d 1337, 1343 (S.D.Fla.,2009.)

In 2009, with motions and cross-motions pending, the Defendant began withholding its discovery production while simultaneously compelling Plaintiff's production and motions arose. Defendant ignored Plaintiff's deposition notice and refused to meet and confer or come to any agreements regarding a deposition of the Defendant's agent.  In other words, Defendant resisted production of the deponent that they had continuously indicated would "substantiate" its version of the facts and protests based upon procedural and technical arguments.  After further court intervention, responding to Defendant's objection for more clarification in the deposition notice and objection to production of a deponent without specific clarification of the subject matter of the deposition, Magistrate Judge Pohorelsky issued an order instructing Plaintiff to re-serve a Notice of Deposition pursuant to Rule 30(b)6 identifying "the subjects about which the defendant is to provide a witness (or witnesses) to testify…"  See a copy of Magistrate Judge Order dated 2/13/2009 attached hereto as Exhibit H.  Plaintiff's notice requested someone with general compliance knowledge, but mainly sought someone with "knowledge of Plaintiff's account", including "settlement" of Plaintiff's account, and "supervisory" information about "Jennifer Woods," the collector who had suddenly become a *former* employee.

Although Defendant maintained a vehement denial of any wrongdoing,  Defendant produced Dennis Christie, DCS's "Director of Compliance," who stated that he had "no knowledge of settlement procedures," never had "any involvement" with Marie Moore's account, "never spoke to" or "knew anything" or had any conversations with "Jennifer Woods" about the within case or the allegations in the Complaint.  Additionally, Mr. Christie did not have any conversations with anyone else about the facts surrounding "Jennifer Woods" before, during or after the filing of the within Complaint.  See selected excerpts from the Deposition Transcript

of Dennis Christie attached hereto as Exhibit I.   In retrospect, if Defendant was going to produce

a witness that was not going to have any knowledge of any facts related to the case, motion

practice over the specifications to be included in the Rule 30 notice were superfluous at best.

The other noticeable flaw in Defendant's approach is that their Director of Compliance had no

knowledge about any of the facts surrounding the case despite the fact that his company had been

sued in a federal lawsuit.  In turn, Mr. Christie stated that he had not discussed the facts of the

lawsuit with anyone, including the persons that may have been involved.  Unfortunately, Mr.

Christie was unable to "substantiate" any of the facts, or refute any of the facts as Mr. Winston or

DCS's in house attorney, Ms. Franklin, had suggested.  Defendant may argue that this is

circumspect, but the truth is that its intention was to stonewall this case from day one.  And

regardless of its inability to substantiate its facts, Defendant pushed further with motion practice,

arguing procedural defects and far reaching legal theories. The facts are that Diversified

Collection Services, Inc., and its agents and representatives, lied to the Plaintiff, lied to

Plaintiff's Counsel, lied to the Court, and did so under oath and under the guise of good faith

effort to defend itself from an abusive consumer.  Defendant has made a mockery of the legal

system, and the docket history of this case is proof of that fact.


        The record is no mystery. The examples listed herein are only mere examples, and

restraint has been exercised from including the complete history of each communication from the

Defendant in this case.


        Moreover, despite the fact the agent "Jennifer Woods" would never be produced, and that

Defendant could not defend this case on its merits, the Defendant filed frivolous counterclaims, a

myriad of costly and time consuming motions, and continued to abuse the judicial process. Defendant resisted any reasonable efforts to resolve this matter in an amicable fashion; its goal was to fight for the sake of fighting.  Mr. Winston himself indicated that Plaintiff's Counsel "must have upset them" and they were going to fight Plaintiff every step of the way.  Plaintiff respectfully asks the Court to take Judicial Notice of these facts today, because Defendant will surely continue to attempt to disparage the Plaintiff and Plaintiff's Attorney solely for the purpose of minimizing its costs at this late stage in the proceeding.

## SETTLEMENT EFFORTS

After Defendant's counterclaims were dismissed, its attempts to stay discovery had failed, its motions denied, both parties depositions had been taken, several thousands of dollars in costs and resources had been expended.  Defendant's first actual attempt to make any "offer to settle" the case was made by letter on or about July 7, 2009, where Defendant offered to "settle the entire matter for $3,000.00 inclusive of all claims for actual damages, statutory damages, and attorney's fees, or any and all other claims arising out of this matter." (emphasis added)  See copy of Jay Winston Letter dated July 7, 2009 attached hereto as Exhibit J.  It should be noted that the letter specifically states that the $3,000.00 offer was a "take it or leave it" basis and "non-negotiable."  The letter further specified that the expiration date of the offer was July 8, 2009, the very next day.  Jay Winston further advised that "my client [Diversified] informs me that, should Plaintiff reject this offer, any future settlement will be in an amount less than the amount offered herein, as Defendant's legal fees will have increased."  This could hardly be viewed as a good faith offer to settle the case, albeit a simple FDCPA violation that would have originally been valued somewhere in the range of a small claims court matter.  More importantly, it should be noted that up until this time, any gesture or request by Plaintiff to engage in

reasonable settlement discussions or proceed with discovery in a courteous fashion, was met with personal attacks and intimidation tactics, more paper pushing and incomprehensible commands to "dismiss the case," and that "my clients want the case dismissed".  See copies of various correspondence from Jay Winston from February 2009 attached hereto as Exhibit K.

Defendant followed up its deceptive approach with misrepresentations to the Court. In a conference before the Honorable Judge Vitaliano, on July 14, 2009, Mr. Winston referenced his "non-negotiable", 'take it or leave it' letter of July 7, 2009, and tells the Court that "Well, we've made **offers** to them but his offers are so out of line your Honor, they've been rejected and we even offered to make an offer last week and he didn't bother to return the call because we told them what range it was going to be in because to us this is a thousand dollar case, maybe a couple, a little bit more at best." See a copy of the Transcript of Civil Cause for Pre-motion conference, p.11, lines 19-25 before the Honorable Eric N. Vitaliano, (July 14, 2009) attached hereto as Exhibit L.  As the Court can see, Defendant distorted the facts of this case for over five years, blaming the Plaintiff and Plaintiff's Counsel for purportedly failing "to respond" to a "take it or leave it" letter that was non-negotiable and would expire within one day of its delivery. These attempts were aimed at giving the Court the false impression that Defendant was acting in good faith and that it had made "offers," as if there was more than one attempt made. Defendant's statements to the Court, similar to its statements throughout the duration of this case, not only lack truthfulness, but also lack any logical connection to reality.  It is almost laughable, if it was not so insulting to the integrity of this Court, the legal profession and the Judicial Process.

Defendant's final attempt to further stonewall any meaningful progression of the case and increase costs was to file a Motion for Summary Judgment.  Plaintiff's Counsel attempted several times to reason with Jay Winston and Arthur Winston to refrain from filing the motion, indicating that it would not succeed and would probably waste time and money, and that resources would be better served by attempting settlement.  They were well aware of the facts, or the lack thereof, and made the motion; doing so was nothing more than a waste of resources, time and money.  Plaintiff's Counsel had even requested on multiple occasions that a Rule 68 Offer of Judgment should be contemplated and that the Plaintiff would accept a reasonable offer.  Defendant's response was that it was the "policy" of Diversified Collection Services, Inc., "never" to make an Offer of Judgment and that would not happen [2].  Although all the evidence had been exchanged, and both parties were well aware of the factual issues in the case and the probability of that the motion would fail, Defendant insisted on taking its chances, because its money would be better spent in the hopes that Plaintiff would be discouraged from investing more time and expense, or that they might obtain some legal error or windfall.  The motion for summary judgment was not brought in good faith.  Defendant could not have possibly imagined that it would be successful with the plethora of factual items at issue, and the fact that it knew that Plaintiff's facts were uncontested.  Plaintiff's Counsel repeated the same request in his letter dated June 8, 2007 (Exhibit G) where he indicated, almost three years prior, that the issues in this case were factual and that an MSJ would be a waste of the costs and judicial resources.

---

[2] While Defendant's policy as to Rule 68 Offers is another point of contention (as Defendant did in fact make a Rule 68 Offer after their MSJ was denied in this case), it is likely that "policy" was necessary to avoid liability on any of the other 396 FDCPA cases filed on PACER, naming Diversified Collection Services, Inc., as Defendant.  It is understandable that having nearly 400 lawsuits filed in federal courts might have an effect on the Defendant's ability to volunteer liability where they have apparently devoted their efforts to maintaining ambiguity on the record as to their abusive conduct and deceptive collection practices.

Defendant stonewalled any meaningful communications. Its agenda was clear. A review of Defendant's motion and memorandum demonstrates its reliance of over-reaching legal theories and self serving conclusions.

Again, Defendant knowingly flooded the Plaintiff's office and the Court with paper, most of which was irrelevant and addressed peripheral issues containing arguments that often appeared to be intended for a different case altogether.  Judge Vitaliano addressed many of these arguments in his Order on the Motion Denying Defendant's request for Summary Judgment.  See *Moore v. Diversified Collection Services, Inc.*, -- F. Supp. 2d --- (2012) *Citations omitted*; 2012 WL 523528 (EDNY 2012).  Familiarity with this Decision is presumed.

## NEW COUNSEL

After the Court's Order denying Summary Judgment and instructing the parties to prepare for trial, Defendant again delayed, and ultimately retained new counsel, Concepcion Montoya to "resolve" the case.

Subsequently, on February 21, 2012, Defendant served an Offer of Judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure in the sum of $4,001.00, representing the maximum statutory award under the FDCPA ($1,000.00) and Plaintiff's actual damages ($3,001.00), plus reasonable attorney's fees and costs to be determined.  On or about March 2, 2012, Plaintiff accepted the Offer of Judgment in an effort to bring finality to this five year long litigation and avoid further delays and waste of resources.

To date, **256.4** hours in billable time and **$2,342.67** in costs have accrued.  While it is arguable that Defendant's tactics are "bad faith" and worthy of sanctions, an appropriate fee award would bar a request for additional sanctions in this matter.

Plaintiff's Counsel provided his entire billing log and proof of costs to Ms. Montoya for review, and also provided options for reduced settlement awards in the interest of judicial economy.  Defendant was only willing to compensate less than one-third of the requested time on this case.  Again, Defendant insists on employing low-balling tactics. Its time and money is more efficiently spent on litigating than on paying for its unlawful conduct. Its approach should not be supported by the Court. The Defendant has resisted from making a good faith effort to reach a compromise in this case with regard to attorney's fees and costs, just as they have done for the last five years, in the hopes that the Court will reduce Plaintiff's recovery and its efforts to abuse the judicial process with dilatory tactics will have been justified.

"A Defendant should not be encouraged to litigate in the expectation of capitulation due to the volume of work alone or in the hope that the Court will reduce Plaintiff's fee request, especially when defendant's fees to its own attorney's are not similarly scrutinized or reduced by the Court."  See *Eddy v. Colonial Life Ins. Co.,* 59 F3d 201 (D.C. Cir. 1995).

The plain purpose of Rule 68 is to encourage settlement and avoid litigation. *Marek v. Chesny,* 473 U.S. 1, 5, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). Rule 68 should not be used a tool which merely gives the Defendant yet another opportunity to argue and reduce Plaintiff's fees, after five years of contentious litigation.

## IV.     ARGUMENT: PLAINTIFF IS ENTITLED TO A FULL AWARD OF
## ATTORNEY'S FEES AND COSTS

Generally, litigants in the United States pay their own attorney's fees regardless of the
outcome of the proceeding.  See *Stanton v. Boeing Co.,* 327 F3d 938 (9th Cir. 2003).  However,
in order to encourage private enforcement of the law, Congress has legislated that in certain
cases, prevailing parties may recover their attorney's fees from the opposing side, when a statute
provides for such fees.  *Id.*

The FDCPA is one such fee shifting statute, providing that any debt collector who fails to
comply with its provisions is liable for reasonable attorney's fees and costs to be determined by
the Court.  15 U.S.C. §1692k.  The reason for the mandatory fee award under the FDCPA is that
Congress chose a 'private attorney general' approach to assume enforcement of the FDCPA.  *Id.*,
*Graziano v. Harrison*, 950 F2d 107, 113 (3rd Cir. 1991)(noting that the FDCPA mandates an
award of attorney's fees as a means of fulfilling Congress's intent that the Act should be
enforced by debtors acting as private attorney's general).  See also *Camacho v. Bridgeport
Financial Inc*., 523 F3d 973 (9th Cir. 2008).

There is no dispute that Defendant must pay Plaintiff's Counsel's fees and costs.
Plaintiff's Counsel litigated this case efficiently, diligently, and successfully withstood complex
and novel defensive arguments, strategies, tactics and unwarranted aggression from the
Defendant and its attorneys for approximately five years, taking the case from inception to Pre-
Trial conference preparation.  Defendant has now agreed, to pay Plaintiff's attorneys fees and
costs pursuant to the FDCPA.

## **LODESTAR**

"Once it has been determined that an award of fees and costs is appropriate, the next step is to determine the amount of the award.  The most useful starting point for determining the amount of reasonable fee is the number of hours reasonably expended …multiplied by the reasonable hourly rate." *Saunders v. Salvation Army*, No. 06 Civ.2980 (SAS), 2007 WL 927529, at 1 (SDNY 2007); see also *Grant v. Martinez*, 973 F.2d 96 (2d Cir. 1992).


The starting point for determining reasonable fees is the calculation of the "lodestar," which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate.  *Jordan v. Multnomah County*, 815 F2d 1258 (9th Cir. 1987)(citing *Hensley v. Eckerhart*, 461 US 424, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983).


In determining a reasonable number of hours, the Court must review time records to determine whether the hours claimed by the applicant are adequately documented and whether any of the hours were unnecessary, duplicative or excessive. *Id.*, see also *Chalmers v. City of Los Angeles*, 796 F2d 1205, 1210 (9th Cir. 1986).  Plaintiff's Counsel has attached hereto as Exhibit A, a detailed account of the time expended in this case.  It is itemized in one tenth of an hour increments and based on contemporaneously made time records.


In addition, Courts have allowed for the recovery of attorney's fees for the time spent preparing a motion for attorney's fees and costs.  *Cancio v. United Credit Network, Inc*., 2005 US Dist. Lexis 13626 (ND Cal. July 6, 2005); *Jordan v. Multnomah County*, 815 F.2d 1258, 1264 (9th Cir. 1987).

## HOURLY RATE

To determine a reasonable hourly rate, the Court should look at "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience and reputation." *Camacho v Bridgeport Financial, Inc.,* 523 F.3d 973, 979 (9th Cir. 2008).

In determining the reasonable hourly rate for each attorney, courts look to current market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Gierlinger v. Gleason*, 160 F.3d 858 (2d Cir. 1998).

In the Eastern District of New York, "hourly rates for attorneys ... have [normally] ranged from $200 to $350 an hour for partners, $200 to $250 for senior associates with four or more years of experience, $100 to $150 an hour for junior associates with one to three years of experience, and $70 to $80 for legal assistants." *Crapanzano v. Nations Recovery Ctr.*, Inc., No. 11–CV–1008, 2011 U.S. Dist. LEXIS 76759, at *4, 2011 WL 2847448 (E.D.N.Y. June 29, 2011), adopted by 2011 U.S. Dist. LEXIS 76665 (E.D.N.Y. July 14, 2011) (citation omitted); see also *Local 282, Int'l Bhd. of Teamsters v. Pile Found. Constr. Co*., No. 09–cv–4535, 2011 WL 3471403 (KAM)(LB), 2011 U.S. Dist. LEXIS 86644, at *33 (E.D.N.Y. Aug. 5, 2011) ("Recent prevailing hourly rates in the Eastern District are: (1) between two hundred dollars ($200.00) to four hundred dollars ($400.00) for partners; (2) between one hundred dollars ($100.00) to two hundred ninety-five dollars ($295.00) for associates; and (3) between seventy dollars ($70.00) to eighty dollars ($80.00) for legal assistants, including paralegals, or legal interns.") (quoting *Szczepanek v. Dabek*, No. 10–CV–2459, 2011 U.S. Dist. LEXIS 23458, 2011 WL 846193 (E.D.N.Y. Mar. 7, 2011)). *Pita v. Tulcingo Car Serv*., No. 10-CV-481, 2011 WL 1790833, at * 9

(E.D.N.Y. Apr. 7, 2011) (Orenstein, M.J.) ($300 hourly rate for partner and $150 hourly rate for associate); *Penberg v. Healthbridge Mgt.,* No. 08-CV-1534, 2011 WL 1100103, at * 6 (E.D.N.Y. Mar. 22, 2011) (Pollak, M.J.) (approving $350 hourly rate for partner, $270 hourly rate for "fairly senior associate," and $250 hourly rate for associate).  Therefore, Plaintiff's Counsel's billing rate is in line with the prevailing market rate.

In *Crapanzano*, Magistrate Judge Bloom followed a 2010 decision by Judge Cogan where the Court surveyed hourly in-district rates awarded in FDCPA cases and determined that $250.00 per hour was a reasonable hourly rate for plaintiff's counsel herein, *Crapanzano v. Nations Recovery Ctr., Inc.,* No. 11–CV–1008, 2011 U.S. Dist. LEXIS 76759, at *4, 2011 WL 2847448 (E.D.N.Y. June 29, 2011)*, adopted by* 2011 U.S. Dist. LEXIS 76665 (E.D.N.Y. July 14, 2011) (citation omitted), citing *Vagenos v LDG Financial Services*, LLC, No. 09 CV 2672 (EDNY Jul. 20, 2010), docket entry, # 41 at 3-4.  For several years, Plaintiff's Counsel has been approved for $250.00 as a reasonable hourly rate in this District.

Although Plaintiff's Counsel has established an approved billing rate in the Eastern District at the rate of $250.00 per hour in past cases, Plaintiff respectfully requests that this Court increase and approve the requested rate of $300.00 per hour, also a reasonable rate in this District.

Plaintiff's Counsel's requested increased billing rate of $300.00 per hour is considered a reasonable billing rate for consumer law attorneys with similar experience in this district. Over the past few years, the economic climate has changed and there is much more competition in the

industry. Costs of living have increased and the costs of managing and operating a private law practice have also increased.

Concomitantly, time is a cost and factor. Not many attorneys would have fought diligently and struggled over an FDPCA case for five years simply to see that their client receive a fair, albeit modest $4,000.00 FDCPA award. Again, Plaintiff would have been amenable to such an offer earlier on in the case, if Defendant was willing to make such an offer. Plaintiff appeals to this Court to recognize that Plaintiff's Counsel has invested and devoted himself and his legal practice to clients like Marie Moore and does not "sell them out" simply because a Defendant's tactics are aggressive. This is a factor that might be considered by the Court to justify an increase in Counsel's hourly rate.

In addition to a Declaration submitted by Plaintiff's Counsel, attached hereto as Exhibit C is the "Consumer Law Fee Survey from 2010-2011" which indicates that a New York attorney with 11-15 years experience in consumer law has an average billing rate of $385 per hour. Plaintiff's counsel has been practicing law now for more than 11 years and is requesting $300.00 per hour, a reasonable figure in this district, given the circumstances.

Courts in this district have also approved hourly rates of up to $400 per hour where the circumstances warranted a higher rate. See *Aramburu v. Healthcare Financial Services, Inc.*, No. 02-CV-6535, 2009 WL 1086938, at *6 (E.D.N.Y. Apr. 22, 2009) (approving hourly rate of $380 in FDCPA case where counsel had underestimated the hours spent litigating the action); *Gross v. Wash. Mut. Bank, F.A.*, 02-CV-4135(RML), 2006 WL 318814, at *6 (E.D.N.Y. Feb. 9,

2006) (approving hourly rate of $400 in FDCPA case where counsel obtained a $350,000 settlement for the class).

Plaintiff's Counsel has also recently had his rate increased in the Southern District of New York where the hourly rate of $325 has been approved in an unopposed fee application by Judge J. Paul Oetken in the matter of *Mihovic v Cambridge, Huxley & Assoc.*, 09 CV 9584 and in the Central District of California by Judge John F. Walter in the matter of *Cuevas v. Check Resolution Services, Inc.*, 09 CV 8823.

## HOURS

To date, **256.4** hours in billable time have accrued. A copy of the contemporaneous billing records are attached hereto as Exhibit A.

Multiplying the reasonable hours expended (**256.4**) by the reasonable hourly rate ($300/hour), the lodestar figure is **$76,920.00.**

## UPWARD MULTIPLIER

Plaintiff respectfully requests that the Court apply an upward multiplier in setting Plaintiff's attorney's fees in this case.  The Court may consider "less objective factors" such as "(1) counsel's time and labor; (2) the litigation's magnitude and complexity; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  *McDaniel v. County of Schenectady*, 595 F.3d 411, 423 (2d Cir. 2010). (quoting *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000)). See e.g., *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999).

More recently, in *Garland v E. Hope Greenberg* (case no. 09-cv-02643), the Honorable Magistrate Judge Pohorelsky stated that an upward multiplier can be used to compensate counsel in particularly "extraordinary" or "complex cases." As described above, this case should have been and could have been resolved fairly easily and very early on in the proceedings. While it may not be the most "complex" case, the circumstances surrounding the history and development of this case are certainly "extraordinary."

As mentioned above, Defendant and its attorneys have blatantly abused the judicial process and used its abundant resources to further intimidate and harass the consumer whose rights they had already violated. Plaintiff was ultimately forced to invest five years of her life, waiting for any closure to this matter, which for her was emotionally taxing and time consuming. Plaintiff's Counsel was also attacked personally at the outset of the case, with derogatory markings placed on his credit report by the Defendant. Although the reports were discovered in a swift fashion and removed once the parties were alerted, this act was only the beginning a five year goose chase, over a case that should never have gone this far. Defendant wanted to drive Plaintiff away and make Plaintiff's Counsel think twice before pursuing consumer rights claims against it. This elongated litigation was never about the merits. It was about Defendant's effort to circumvent every policy consideration, all the legislative intent and all the case law that attempts to minimize litigation, encourage settlements and regulate abusive collection practices. It was about Defendant abusing the judicial process to attempt to avoid liability against a consumer it had already cheated and felt that it could continue to do so.

Moreover, since Defendant insisted on putting up a fight at any cost, the litigation dragged on, and Plaintiff's Counsel has been tied up in this litigation for five years. Everyone has aged since the inception of this otherwise simple case.  This file has been infamously known in Plaintiff's Counsel's office as the "oldest case on the shelf."  Marie Moore is the longest running client in the office. This was intended to be a simple case and the fact that it has continued this long, and with all that has transpired, this case is certainly "extraordinary" and should be considered for an upward multiplier so that this type of conduct by Defendant will be recognized as wasteful and wrong.

Commonly, we see fee decisions where the Courts, using their broad discretion, reduce a Plaintiff's fee petition based upon unreasonableness of an Attorney's practices.  Defendants, namely debt collectors, on the other side of an FDCPA action have noticed the trend as well. The unfortunate result is that the debt collector defendant has the incentive to drive a case into litigation, and compel a Plaintiff to move for fees, in the hopes that the Court will reduce the award and it is often the best "deal" for them to do so.  This conclusion is harmful in that it is inconsistent with the congressional intent of the FDCPA, and with the intentions of Rule 68 of the Federal Rules.  This case is a prime example of Defendants taking advantage of the laws and policies that are intended to minimize litigation and judicial costs, and thrust parties into litigation solely for the purpose of attempting to set a precedent and circumvent liability when they have a significant amount of exposure. While Plaintiff would like to see her full recovery on this case, there is more at stake than the money alone.   It is a matter of justice and creating the balance between scrutiny of a Plaintiff's fee petition, which has become the norm, to the inquiry towards a tactical and vexatious Defendant.

## POLICY CONSIDERATION

According to the Court in *Venes v. Professional Service Bureau Inc.,* "Civil suits will deter abusive practices only if it is economically feasible for consumers to bring them.  Unless consumers can recover attorney's fees it may not be possible for them to pursue small claims . . . [U]nscrupulous collection agencies have little to fear from such suits if consumers must pay thousands of dollars in attorney fees...  Congress recognized this problem and specifically provided for the award of attorney fees to successful plaintiffs." See *Venes v. Professional Service Bureau, Inc.,* 353 N.W.2d  671 (Minn. App. 1984).


Plaintiff submits that fee standards in civil rights cases are applicable here because an important public policy was vindicated.  *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (approving lodestar method in FDCPA case).  Fee shifting statutes, such as the FDCPA, encourage private counsel to enforce important civil rights and consumer-protection policies.  If a provision for counsel fees was not included and an individual was forced to pay his/her own attorney fees, enforcement of the statute would be unlikely.  However, by compensating private attorneys at competitive rates, highly-skilled counsel will take on consumer-related cases and hence increase the likelihood that the congressional policy of redressing public interest claims will be upheld.  *Student Public Interest Research Group v. AT&T Bell Laboratories*, 842 F.2d 1436, 1449 (3d Cir. 1988).


Here, Defendant violated the Plaintiff's consumer rights by making false threats and various deceptive statements, conduct which Congress specifically prohibits within the FDCPA's

statutory provisions.  As such, Plaintiff's Counsel should be compensated for the time and work spent litigating this case on Plaintiff's behalf.

Defendant took a no-pay position on this case and "denied any wrongdoing."  Only several years into the litigation, did Defendant begin to attempt meaningful settlement discussions.  This pattern in defensive strategy has been recognized and should not be supported by the Courts. See *Johnson v. GDF, Inc.,* No. 11-1934 (N.D. Ill., E. Div., February 13, 2012) (Reversed and remanded.)  In an FLSA action where plaintiff received $5,000 in compensatory and punitive damages following a three-day trial, it was held that where liability is fully contested, as it was here, the District Court cannot base a reduction in hours on the claim that the case would have settled earlier in the case.

At this late stage in the proceedings, Plaintiff respectfully requests that the Court not allow this fee application to be used to reward Defendant with another opportunity to litigate over the legal fees.  See *In re Martinez,* 266 B.R. 523, 537 (Bankr.S.D.Fla.), *aff'd,* 271 B.R. 696 (S.D.Fla.2001)(noting that attorney's fees under the FDCPA should not be construed as a special or discretionary remedy, " 'rather the [FDCPA] *mandates* an award of attorney's fees as a means of fulfilling Congress' intent that the [FDCPA] should be enforced by debtors acting as private attorneys general.' ") (emphasis in original) (*quoting Graziano v. Harrison,* 950 F.2d 107, 113 (3d Cir.1991)).  *Emanuel v. American Credit Exchange,* 870 F.2d 805, 809 (2d Cir.1989); *Edwards v. National Business Factors, Inc.,* 897 F.Supp. 458, 459 (D.Nev.1995). Rather, Plaintiff respectfully requests that the Court grant the full fee award, the upward multiplier and any other and further relief the Court deems just and proper.

## V.      CONCLUSION

Defendant should not be rewarded with a reduction of Plaintiff's award for attorney's fees when its time spent challenging the prosecution of its cases is not equally scrutinized.

Based upon the annexed Declaration of Amir J. Goldstein, Esq., Plaintiff's Counsel herein, the attached contemporaneous billing records, together with additional exhibits in support, Plaintiff demonstrates that a reasonable lodestar amount of **256.4** hours has been expended on prosecution of this case to a meaningful resolution in the interest of justice and in the best interest of the parties.  Plaintiff's Counsel respectfully requests a reasonable billing rate in this District of $300.00 per hour, totaling **$76,920.00** in attorney's fees.  Plaintiff has also included an itemized costs sheet representing accrued costs in the sum of **$2,342.67**, for a total of $83,882.87 in fees and costs.

Accordingly, Plaintiff respectfully requests that the Court enter an award for the Plaintiff in the following amount:

-        Plaintiff's Award for Statutory & Actual Damages: $4,001.00

-        Attorney's Fees: $76,920.00

-        Costs: $2,342.67

                              **GRAND TOTAL: $83,263.67**

Dated: March 28, 2012                          Respectfully submitted,

                              ___/S/ AJG_____
                              AMIR J. GOLDSTEIN, ESQ.
                              Attorney for the Plaintiff
                              166 Mercer Street, Suite 3A
                              New York, New York 10012
                              212.966.5253 telephone
                              866.288.9194 facsimile

## CERTIFICATE OF SERVICE

I, Amir J. Goldstein, hereby certify that on March 28, 2012, I served the within Motion for Attorney's Fees and Costs together with supporting Declaration and Exhibits upon the Defendants as follows:

Via ECF/Electronic Mail to: Concepcion A. Montoya, Esq: [cmontoya@hinshalaw.com]

_____/S/ AJG_____
Amir J. Goldstein