UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MARIE MOORE,

                          Plaintiff,                        **REPORT AND RECOMMENDATION**

          - v -                                      07-CV-397 (ENV) (VVP)

DIVERSIFIED COLLECTION SERVICES, INC.,

                          Defendant.
-----------------------------------------------------------------x

POHORELSKY, Magistrate Judge:

      The plaintiff Marie Moore ("Moore") commenced this action against the defendant Diversified Collection Services, Inc. ("Diversified") pursuant to the Fair Debt Collection Practices Act, 15 U.S.C.§ 1692 et seq. ("FDCPA"). The plaintiff has accepted the defendant's Offer of Judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure in the sum of $4,001.00, plus reasonable attorney's fees and costs to be determined. Docket Entry ("D.E.") 74. The parties were not able to come to an agreement as to fees, and thus the plaintiff moved before this court for attorney's fees and costs. Judge Vitaliano referred the matter to the undersigned for preparation of a report and recommendation on the matter. For the reasons below, the court recommends granting the plaintiff's motion in part and denying it in part, providing counsel with an overall recovery of $51,801.75 in attorneys' fees and $2,342.67 in costs.

## BACKGROUND AND PROCEDURAL HISTORY

      In her Complaint, Moore asserted that Diversified violated four provisions of the FDCPA, §§ 1692d, 1692e, 1692f, and 1692g, due to its attempts to collect a debt Moore owed to the United States Department of Education. Diversified interposed a counterclaim against Moore for attorney's fees and costs under § 1692k of the Act. After both parties moved to dismiss, the Court granted Diversified's motion to dismiss Moore's claims under §§ 1692d,

-1-

1692f, and 1692g, denied the motion as to Moore's claim under § 1692e, and dismissed Diversified's counterclaim. Diversified then moved for summary judgment on the remaining claim, but that motion was denied because an issue of fact remained as to the plaintiff's § 1692e claim. Although attempts at settlement were made throughout the litigation, the case proceeded through discovery and was settled once the case was ready for trial.

In the fee application, the plaintiff requests $79,680.00 in fees and $2,342.67 in costs. The defendant does not dispute that the plaintiff is entitled to reasonable attorney's fees under the terms of its Offer of Judgment and the fee-shifting provision of the FDCPA, 15 U.S.C. § 1692k(a)(3). The defendant does object to the plaintiff's fee application and argues that it should be denied or reduced on various grounds.[1]

## I. STANDARDS OF LAW: REASONABLE ATTORNEY'S FEES

Where a party is entitled to fees, the district court calculates the "presumptively reasonable fee" by the "lodestar" method, which entails determining the "number of hours reasonably expended on the litigation [and] multipl[ying that figure] by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'") (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008) and citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S. Ct. 1662, 1673 (2010)); *McDaniel v. County of Schenectady*, 595 F.3d 411, 420 (2d Cir. 2010). The Supreme Court held that "the

---

[1] In support of the motion for fees, Dkt. No. 76, the plaintiff submitted a Memorandum in Support, D.E. 76-1, and a Declaration of Amir Goldstein, Esq., with exhibits, D.E. 76-2-76-14. The defendant submitted a Memorandum in Opposition, D.E. 81, a Declaration of Concepcion A. Montoya with exhibits, D.E. 81-1-81-7, and the Affidavit of Elizabeth E. Franklin, D.E. 81-8. The plaintiff also filed a Reply Memorandum, D.E. 82, and a Reply Declaration of Amir Goldstein, Esq., with exhibits, D.E. 82-1-82-5.

lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Kenny A.*, 130 S. Ct. at 1672 (emphasis in original). Relying on its prior decision in *Delaware Valley*, the Court stated that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Id.* at 1673 (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986)).

In *Arbor Hill*, the Second Circuit held that, consistent with the Supreme Court's guidance, a "presumptively reasonable fee" would be determined by considering a multitude of case-specific factors[2] in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplying that rate by the number of hours reasonably spent on the case. *Arbor Hill*, 522 F.3d at 184, 190-91. District courts were to now "bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorneys' fees in setting a reasonable hourly rate." *Arbor Hill*, 522 F.3d at 190. (emphasis in original). This determination is undertaken consistent with the principle that a "reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* at 190. The reasonableness of hourly rates are guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984), and the

---

[2] These factors include, but are not limited to, the "complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively[,] the timing demands of the case, [and] whether an attorney might have an interest in achieving the ends of the litigation or might initiate the representation himself," *Arbor Hill*, 522 F.2d at 184, 187-90 – as well as the twelve factors the Fifth Circuit employed in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The *Johnson* factors include (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to properly perform the relevant services; (4) the preclusion of other employment attendant to counsel's acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) fee awards in similar cases. *Johnson*, 488 F.2d at 717-19.

relevant community is generally the "district in which the court sits," *Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983).

This Circuit requires contemporaneous billing records for each attorney, documenting the date, the hours expended, and the nature of the work. *See Scott v. City of New York*, 643 F.3d 56, 57 (2d Cir. 2011); *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147-48, 1154 (2d Cir. 1983). The court may exclude hours that it finds excessive, duplicative, or unnecessary. *Duke v. County of Nassau,* No. 97-CV-1495, 2003 WL 23315463, at *1 (E.D.N.Y. Apr. 14, 2003) (*citing Hensley*, 461 U.S. at 434; *Luciano v. Olsten Corp.,* 109 F.3d 111, 115 (2d Cir. 1997)).

**II. HOURLY RATE**

In addition to the factors discussed above, the court is guided by the hourly rates normally employed in this district. *See Simmons v. New York City Transit Authority*, 575 F.3d 170, 174 (2d Cir. 2009). Hourly rates in the Eastern District of New York range based on years of experience, and generally are $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates. *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 298-99 (E.D.N.Y. 2012) (citing cases); *Garland v. Cohen & Krassner*, No. 08-CV-4626, 2011 WL 6010211, at *10 (E.D.N.Y. Nov. 29, 2011) (citing cases).

The plaintiff's counsel Mr. Amir Goldstein requests to be compensated at a $300 hourly rate. He has been practicing for more than eleven years in New York, and five years in the state of California. Goldstein Decl., D.E. 76-2, ¶ 4. He started his own solo practice in 2005 with an emphasis on FDCPA and FCRA litigation. *Id.* ¶ 5. He points out that he had previously been awarded a $250 hourly rate in this district, but requests that the court approve a $300 hourly rate in this case. In *Crapanzano*, an FDCPA case, Magistrate Judge Bloom determined that $250 per hour was a reasonable rate for Mr. Goldstein. *See Crapanzano v. Nations Recovery Center, Inc.*, No. 11–CV–1008, 2011 WL 2847448, at *2 (E.D.N.Y. June 29, 2011) (relying on survey of

hourly rates in *Vagenos v. LDG Fin. Servs. LLC*, No. 09–CV–2672, D.E. 41 (E.D.N.Y. Jul. 20, 2010)), *report and recommendation adopted* 2011 WL 2837415 (E.D.N.Y. Jul 15, 2011).

The plaintiff argues that the increased billing rate is reasonable because it reflects a change in rates awarded to consumer law attorneys with his level of experience in the past few years. The plaintiff's counsel also points out that he represented his client diligently for five years against aggressive defense counsel and has been awarded higher rates in other districts. The defendant argues that the plaintiff's counsel should not receive more than $200 to $250 per hour, given the hourly rates awarded to counsel in the past and that most of the work was done between 2007 and 2010 when Mr. Goldstein had less experience.

Contrary to the defendant's arguments, "current rates, rather than historical rates, should be applied in order to compensate for the delay in payment." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (citing *Missouri v. Jenkins*, 491 U.S. 274, 283–84 (1989)).[3] The court finds that in light of current rates, an increase of 10% to Mr. Goldstein's hourly rate is reasonable and recommends that he be compensated at $275 per hour.

## III. REASONABLE NUMBER OF HOURS

The defendant argues that the plaintiff should not recover any fees because counsel failed to submit contemporaneous time records, or in the alternative, that fees should be substantially reduced due to vague time entries, excessive billing, and because the plaintiff was unsuccessful on some of her claims.

---

[3] There is some disparity in the courts as to the proper methodology applicable to the "current rate" rule, but the prevailing approach is to award counsel a reasonable current rate for the entirety of the award. *See Konits v. Valley Stream Cent. High School Dist.*, 350 Fed. Appx. 501, 505 n.2 (2d Cir. 2009) (on appeal, court was "left uncertain by the selection of different rates for different time periods, which suggests the use of historic rather than current rates") (citing *Fletcher*, 143 F.3d at 764; *Whitney v. JetBlue Airways Corp.*, No. 07-CV-1397, 2009 WL 4929274, at *7-9 (E.D.N.Y. Dec. 21, 2009). *Cf.*, *Todaro v. Siegel Fenchel & Peddy, P.C.*, 697 F. Supp. 2d 395, 400 (E.D.N.Y. 2010) (citing *Lochren v. County of Suffolk*, 344 Fed. Appx. 706, 709 (2d Cir. 2009)).

### A. STANDARDS OF LAW

Determining reasonable attorneys' fees still requires a review of reasonably detailed contemporaneous time records, as contemplated by *New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983); *see also Scott*, 643 F.3d at 57. Courts are given broad discretion to evaluate the reasonableness of the number of hours expended. *See Anderson v. Sotheby's, Inc.*, No. 04-CV-8180, 2006 WL 2637535, at *1 (S.D.N.Y. Sept. 11, 2006); *see also Hensley*, 461 U.S. at 434; *Luciano*, 109 F.3d at 115-16. In considering what is reasonable, courts "should exclude excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (citing *Hensley*, 461 U.S. at 433-35). Courts should consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). It is the attorney's burden to maintain contemporaneous records, and where fees are not adequately documented, fee applications may be denied or reduced. *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992). A court has broad discretion to "trim the fat" in an application for attorneys' fees, and to eliminate excessive or duplicative hours. *See Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d. Cir. 1988); *Carey*, 711 F.2d at 1146-47; *Quaratino*, 166 F.3d at 425.

"In evaluating time sheets and expense records, some courts have dealt with the problem posed by excessive or redundant billing by simply subtracting the redundant hours from the amount of hours used to calculate the lodestar." *Siracuse v. Program for the Development of Human Potential*, No. 07-CV-2205, 2012 WL 1624291, at *34 (E.D.N.Y. Apr. 30, 2012) (citing cases). A district court is not, however, required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). Thus, courts have also commonly used "percentage reductions 'as a practical means of trimming fat from a fee application.'" *Siracuse*, 2012 WL 1624291, at *35

(quoting *Carey*, 711 F.2d at 1146).  As discussed below, the court finds that it is necessary to reduce the number of hours requested here and recommends denial of hours for certain discrete tasks and percentage reductions for some other groups of tasks.

### B.  CONTEMPORANEOUS TIME RECORDS

The plaintiff's counsel has submitted time records, a portion of which represents partially reconstructed time from notes taken in his case file.  Although the defendant argues that the plaintiff's submissions fail to satisfy the contemporaneous time record requirement, the court finds that the plaintiff's submissions do satisfy the rule.  Due to the vagueness and incompleteness of some of the plaintiff's entries, however, the court recommends that the plaintiff's time should be reduced by 10% overall.

The Second Circuit has stated unequivocally that its decision in *Carey* established "what is essentially a hard-and-fast-rule from which attorneys may deviate only in the rarest of cases, and that any deviations from the rule must be based on circumstances expressly found by the awarding court, in the first instance, to merit such deviation."  *Scott*, 643 F.3d at 57 (internal quotations and citations omitted).  Thus, after *Scott*, and consistent with that decision, courts have awarded discounted fees to attorneys who failed to maintain contemporaneous time records where the court has determined that exceptional circumstances were present.  *See In re City of New York*, No. 03-CV-6049, 2011 WL 7145228, at *12 (E.D.N.Y. Dec. 2, 2011) (citing cases), *Report and Recommendation Adopted* (Jan. 19, 2012); *see also Scott*, 643 F.3d at 59 (where attorney did not submit contemporaneous time records and no exceptional circumstances present, allowing recovery of fees for time reflected on the court docket and putting onus of gathering such time on counsel).

Attorneys seeking fees may submit a typed listing of hours from computer records, where they made contemporaneous entries as the work was completed, and their billing was based on these contemporaneous records.  *Cruz v Local Union Number 3 of the Int'l Brotherhood of*

*Electrical Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994) (finding such records to be in accordance with *Carey*). Where an attorney seeks to make such a showing, however, *Carey* still requires proof that "original contemporaneous entries of sufficient specificity were punched into or logged in a database from which the printouts or summaries are derived." *Handschu v. Special Services Division*, 727 F. Supp. 2d 239, 250 (S.D.N.Y. 2010). If the entries are so vague that a court cannot determine whether the time was reasonably expended, the court will deny or reduce the time requested. *See Kirsch*, 148 F.3d at 172-73; *Nimkoff Rosenfeld & Schechter, LLP v. RKO Properties, Ltd.*, No. 07-CV-7983, 2011 WL 8955840, at \*6 (S.D.N.Y. Apr. 7, 2011) (citing cases where fees were reduced ten to twenty percent overall due to vague entries).

Here, Mr. Goldstein has submitted a declaration stating that "some [of his time] entries were notated by hand and later incorporated into the Exhibit provided as Plaintiff's contemporaneous billing log." Goldstein Reply Decl., D.E. 82-1, ¶ 10. Mr. Goldstein has submitted examples of such notes to the court. Goldstein Reply Decl, Ex. A, D.E. 82-2. These consist of handwritten notes in the case file that generally indicate the task, the date, and the time expended broken down by tenths of an hour. Although these notes are hard to read, contain various abbreviations, and are quite brief, they comply with the *Carey* rule and as discussed above, the submission of a computer transcript of a handwritten log is acceptable. The court notes, however, that in transferring his notes to the computer, counsel amplified or modified his entries in an apparent attempt to clarify them. The court will thus take the notes themselves as the relevant submissions for these entries. *Cf. Handschu*, 727 F. Supp. 2d at 249 ("[D]escriptions of work recollected in tranquility days or weeks later will not do" as contemporaneous time records). What is more difficult, however, is that counsel's billing practice overall lacks the detail necessary to assess the reasonableness of the time he spent. His entries, particularly those consisting of notes in the file, are often terse – many of his entries indicate simply that he phoned his client or his adversary. Although in some instances that

would be acceptable, counsel's time is replete with such vague entries. The vagueness of other entries prevent the court from determining whether the time spent is justified – for instance, an entry at 7/6/2007 bills one hour to "serving" initial disclosures. D.E. 82-3, at 2. Clearly, sending an email, fax, or mailing a hard copy of a document did not take one hour. In another entry, counsel billed seven hours to a single entry for the time period 7/1/2010 through 1/19/2012 for periodic updates to client while the motion for summary judgment was pending. D.E. 82-3, at 7. This appears to be an estimate of counsel's time made after the fact, not a contemporaneous time record. Counsel's entries are also replete with typos and unexplained abbreviations.

The defendant also challenges the accuracy of Mr. Goldstein's time records because they do not correspond to time charged by defendant's former counsel and statements made by the plaintiff during her deposition. For instance, the defendant points out that although an entry in counsel's records indicate that he forwarded the Complaint to his client prior to filing suit, she testified in a deposition two years later that she never received a copy of the Complaint from her attorney. *See* Def. Opp., D.E. 81, at 10-11 (chart comparing 4.4 hours billed to such tasks to deposition testimony). The defendant has also submitted its former counsel's time sheets, which in some instances do not reflect communications between counsel billed by Mr. Goldstein and in other instances reflect settlement discussions that were not billed by Mr. Goldstein. *See* Montoya Decl., Ex. 3, D.E. 81-4. As for inconsistencies with the plaintiff's testimony regarding her recollection of such events, the court credits counsel's contemporaneous time records attached to his declaration. As to apparent over-billing and under-billing as compared to defense counsel's time sheets, those discrepancies do not justify denying fees altogether as it is not clear whose entries are accurate.

Given the Second Circuit's consistent directive to the courts in this Circuit to strictly adhere to the contemporaneous time record requirement, including in fee-shifting cases like those Mr. Goldstein regularly litigates, a reduction for counsel's vague and incomplete billing

-9-

practice is necessary. Therefore, although counsel has technically complied with the contemporaneous time record requirement, the court finds that his overall compensable time should be reduced by 10%.

### C. UNSUCCESSFUL CLAIMS

The defendant argues that the court should reduce the plaintiff's time for excessive billing and for his lack of success on a number of the claims. The Second Circuit has set forth a two-step inquiry when faced with a challenge to hours billed to unsuccessful claims:

> At step one of this analysis, the district court examines whether the plaintiff failed to succeed on any claims wholly unrelated to the claims on which the plaintiff succeeded. The hours spent on such unsuccessful claims should be excluded from the calculation. At step two, the district court determines whether there are any unsuccessful claims interrelated with the successful claims. If such unsuccessful claims exist, the court must determine whether the plaintiff's level of success warrants a reduction in the fee award. If a plaintiff has obtained excellent results, however, the attorneys should be fully compensated.

*Grant*, 973 F.2d at 101 (citing *Hensley*, 461 U.S. at 434-36) (internal citations omitted); *see also Thorsen v. County of Nassau*, No. 03-CV-1022, 2011 WL 1004862, at *5 n.4 (E.D.N.Y. Mar. 17, 2011) (hours spent on claims dismissed on summary judgment are compensable if they involved a "common core of facts and related legal theories.") (citing *Hensley*, 461 U.S. at 435). The Second Circuit has noted that "in many civil rights cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories" and thus in assessing the reasonable amount of hours "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended." *Konits v. Karahalis*, 409 Fed. Appx. 418, 421 (2d Cir. 2011).

All of the plaintiff's claims except for one were dismissed on the defendant's motion to dismiss. The defendant argues that these claims are based on severable facts and legal theories because the claims dismissed related to the collection letter and the plaintiff's termination, although the remaining claim related solely to representations made in a telephone conversation.

The defendant therefore requests that the time spent on the motion to dismiss, 30.1 hours, should be reduced by 75%. Further, the defendant argues that the plaintiff should not recover any of the 24.3 hours of time spent on a motion to amend the dismissed claims that was denied. The court agrees with the defendant – and indeed the plaintiff does not dispute the assertion – that the dismissed claims were not based on the same conduct as the claim under which the plaintiff ultimately prevailed. Although the dismissed claims related to the collection letters the plaintiff received, the plaintiff was able to proceed on a claim related to a telephone communication she had with one of the defendant's employees. The plaintiff's brief in opposition to the motion to dismiss, however, presented little argument on the claims that were ultimately dismissed but focused instead on the claim related to the telephone call. A reduction of 75% is therefore inappropriate. The court would discount 25% of the plaintiff's time spent on the motion to dismiss, resulting in an award of 22.6 hours, and would not allow any recovery for the time spent on the motion to amend.

### IV. EXCESSIVE HOURS

The court also agrees with the defendant that some of the hours billed by the plaintiff's counsel are excessive. Although the defendant relies on the court's decision in *Crapanzano*, 2011 WL 2847448, *supra*, as a basis for reducing these hours, the decisions in that matter are not applicable here simply because the case involved the same attorneys. The court finds that the following time entries identified by the defendant should be reduced, but otherwise finds the plaintiff's time to be reasonable: (1) 2.5 hours drafting the Complaint should be reduced to 2 because three of the four causes of action were dismissed; and (2) 37.7 hours relating to drafting discovery demands, reviewing the defendant's discovery, and litigating discovery disputes should be reduced by 25%, to 28.3 hours. In view of the plaintiff's counsel's asserted experience in litigating FDCPA cases (warranting a higher hourly rate), the amount of time spent in litigating this aspect of the case is excessive.

### V. MULTIPLIER

To the extent a multiplier is still a useful tool to use in attorney's fees litigation, it is not warranted in this case. Courts customarily consider whether a multiplier should be applied to the lodestar to account for "less objective factors" that may be taken into consideration in setting an appropriate fee. *See e.g., Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999). Generally, however, all of the factors relevant to plaintiff's request for the multiplier are considered in the Court's determination of an appropriate hourly rate. *See McDaniel v. County of Schenectady*, 595 F.3d 411, 422 (2d Cir. 2010) ("[I]t makes little difference whether a court, following *Arbor Hill*, considers case-specific factors to estimate a reasonable rate for an attorney's services, which is then multiplied by the number of hours worked, or whether the court takes the traditional approach and considers these same factors in calculating a multiplier to the lodestar.").

The plaintiff argues that this case presents extraordinary circumstances warranting a multiplier because the defendant took an aggressive litigation stance resulting in years of unnecessary litigation instead of genuine attempts at an early settlement. The plaintiff's counsel also points out that shortly after the case was filed, the defendant placed four derogatory markings on plaintiff's counsel's personal credit report. Mr. Goldstein notified the defendant's counsel and the erroneous markings were soon removed. The defendant strongly disagrees with the plaintiff's characterization of its counsel's litigation strategy. It argues that it made several attempts to settle the case early on but was faced with unreasonable settlement demands from the plaintiff. The defendant also disputes the plaintiff's counsel's assertion that it targeted counsel's credit report. The defendant has submitted an Affidavit of its Compliance Counsel asserting that based on her review of Diversified's records, the negative markings on the defendant's credit report were due to a computer error. *See* Franklin Affidavit, D.E. 81-8.

Nothing about this matter was particularly extraordinary nor were the issues complex or novel. That the defendant chose to litigate the case aggressively is also not a reason to award a multiplier. As the defendant points out, although the plaintiff's counsel was vexed by his relationship with opposing counsel, he did not move for sanctions at any point during the litigation or in connection with this motion. The court would encourage early settlement of meritorious cases, but the fact that the case settled late in the litigation has yielded the plaintiff the recovery of a greater fee award, which is sufficient to compensate counsel for his time.[4]

### VI. FEES INCURRED AFTER SETTLEMENT AND FOR THE FEE APPLICATION

The plaintiff is not entitled to fees incurred after she accepted the defendant's offer of judgment. The defendant's Rule 68 Offer of Judgment stated that it is limited to "reasonable attorney's fees and costs incurred through the date [of] service of this Offer[.]" Montoya Decl. Ex. 2, D.E. 81-3. Rule 68(a) of the Federal Rules of Civil Procedure also states that "[a]t least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, *with the costs then accrued*." Fed. R. Civ. P. 68(a) (emphasis added). The court should enforce the plain language of the parties' agreement. *See Bosket v. NCO Financial Systems, Inc.*, No. 11–CV–678, 2012 WL 4093023, at *1 (N.D.N.Y. Sept. 17, 2012) ("When a settlement agreement is reached, the parties are bound by its plain terms, notwithstanding the existence of fee-shifting provisions in a statute."); *see also Scott v. Niagara Credit Solutions, Inc.*, No. 09-CV-113, 2012 WL 729755, at *2 (W.D.N.Y. Mar. 6, 2012) (limiting fees to the date of acceptance of offer in accordance with the terms of the agreement). The plaintiff's request for 14.6 hours in fees incurred after the acceptance of the defendant's settlement offer should therefore be denied.

---

[4] The defendant has not challenged counsel's bill for time spent disputing the error on his personal credit report. Although this is not an admission of any deliberate wrongdoing, recovery of these fees should be more than enough to compensate counsel for the inconvenience.

-13-

**VII. COSTS**

The plaintiff requests $2,342.67 in costs, all of which were incurred prior to the acceptance of the defendant's offer of judgment. The court finds that the plaintiff's counsel has provided adequate documentation for these costs. *See* Goldstein Decl., Ex. B, D.E. 76-4. The court therefore recommends that plaintiff be permitted recovery of his costs.

**CONCLUSION**

In accordance with the above considerations, the undersigned recommends that judgment be entered for the plaintiff in the following amounts: (1) $4,001 in settlement of her claims, (2) $51,801.75 in attorney's fees, and (3) $2,342.67 in costs.

\* \* \* \* \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**Respectfully Recommended,**

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
March 19, 2013